Richmond

CURTIS BALL

V.

COMMONWEALTH OF VIRGINIA

January 16, 1981.

Record No. 800309.

Present: All the Justices.

*William P. Sheffield; Michael K. Crookshank* for appellant.
*Thomas D. Bagwell, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Curtis Ball was tried by a jury on an indictment charging him with capital murder, under the provisions of Code § 18.2-31(d).[1] The jury, in the bifurcated trial required by Code §§ 19.2-264.3 and -264.4, found Ball guilty as charged and fixed his punishment at imprisonment

---

[1] Code § 18.2-31 provides:

"The following offenses shall constitute capital murder, punishable as a Class 1 felony:

\* \* \*

"(d) The willful, deliberate and premeditated killing of any person in the commission of robbery while armed with a deadly weapon;"

\* \* \*

for life. By final order dated November 28, 1979, the trial court entered judgment on the verdict. On appeal, Ball contends that the trial court erred in denying him the opportunity to present to the jury his theory of the case by refusing to grant two of his proffered instructions.

The uncontradicted evidence shows that about 8:00 p.m. on February 13, 1979, Ball, dressed in women's clothes, entered the Rex Shopping Center in Washington County near Abingdon. He carried a handbag containing a loaded pistol. Ball picked up a bag of dog food, proceeded to the cashier's counter, and asked for the manager. He was directed to the clothing department, where he found Roger Roark, the Assistant Manager in charge of the store. Ball demanded money; Roark responded that he had none. A struggle ensued, during which three or four shots were fired from Ball's pistol; Roark was mortally wounded, and Ball was shot in the leg. Ball had the pistol in his possession after the fatal shot was fired.

Testifying in his own defense, Ball admitted that he went into the store for the purpose of committing robbery, but he insisted that he had no intention of shooting anyone. When he confronted Roark and demanded money, Roark and his father "dived" at him to disarm him. As Roark and Ball wrestled for control of the pistol, the weapon was fired several times, and both Roark and Ball were wounded in the melee.

The Commonwealth's theory at trial was that Ball was guilty of capital murder or nothing. Ball's position was that there was evidence from which the jury could find him guilty of a lesser offense. He offered Instruction B that would have permitted the jury to consider the circumstances under which the fatal shot was fired in determining whether Roark's shooting was willful, deliberate and premeditated. He also tendered Instruction F that would have permitted the jury to find him guilty of capital murder, murder of the first degree, murder of the second degree, voluntary manslaughter, involuntary manslaughter, or not guilty. Both instructions were refused, the trial court agreeing with the Commonwealth's Attorney that under the evidence Ball could only be found guilty or not guilty of capital murder.

In oral argument before us, Ball's counsel again advanced the theory that the shooting of Roark was accidental so that he was not guilty of capital murder but of some lesser degree of homicide not requiring a willful, deliberate and premeditated act. For the first time, counsel explicitly argued that Instruction F would have permitted the jury to find Ball guilty of felony murder.[2]

---

[2] Code § 18.2-32 provides:

"Murder, other than capital murder, by poison, lying in wait, imprisonment,

The Attorney General, while arguing that there was no appreciable evidence to support a felony-murder instruction, conceded that if there was such evidence perhaps the trial court *sua sponte* should have given an instruction relevant thereto. In his view, the issue was one of appreciable evidence. In the absence of such evidence, he maintained, no request for a felony-murder instruction having been made by defense counsel, there was no duty upon the trial court to intervene on its own initiative and give the instruction. The Attorney General has failed to evaluate the evidence correctly.

. [1] There was no evidence to support a capital-murder instruction in this case. Under the evidence, the only offense of which Ball could properly be convicted was felony murder of the first degree under § 18.2-32. The evidence, construed in the light most favorable to the Commonwealth, showed that Roark was killed during an attempted robbery, rather than in the actual commission of robbery. As we pointed out in *Turner* v. *Commonwealth,* 221 Va. 513, 527, 273, S.E.2d 36, 45 (1980), decided after Ball's appeal had been argued, murder in an attempted robbery violates § 18.2-32, but not § 18.2-31, the capital-murder statute. Indeed, even an unintentional killing during a robbery or an attempted robbery violates § 18.2-32 and is punishable as murder of the first degree. *See Haskell, et al.* v. *Commonwealth,* 218 Va. 1033, 1044, 243 S.E.2d 477, 483 (1978).[3]

After *Turner* was decided, counsel in the present case responded in writing to our request that they give us their views on the question whether Ball could properly have been convicted of capital murder. The Attorney General argued that the words "during the commission of a robbery" included all activities of an accused from his initial confrontation with the victim until his escape has been effected. Various cases from Virginia and other jurisdictions were cited in support of this argument. Moreover, the Attorney General urged that we repudiate as erroneous dictum the statement in *Turner* that murder in an attempted robbery violates § 18.2-32 but not § 18.2-31(d).

*Coppola* v. *Commonwealth,* 220 Va. 243, 257 S.E.2d 797 (1979), *cert. denied,* 444 U.S. 1103 (1980), and *Stamper* v. *Commonwealth,*

starving, or by any willful, deliberate, and premeditated killing, or in the commission of, *or attempt to commit,* ... robbery, ... except as provided in § 18.2-31, is murder of the first degree. ..." (Emphasis added).

\* \* \*

[3] That § 18.2-32 applies even to unintentional killings in the commission of or attempt to commit one of the specified felonies is demonstrated by the language of § 18.2-33, which defines as murder of the second degree an accidental or unintended killing in the course of some felonious act *only* if the felony involved is not one of those listed in § 18.2-31 or § 18.2-32.

220 Va. 260, 257 S.E.2d 808 (1979), *cert. denied,* 445 U.S. 972 (1980), cited by the Attorney General, are inapposite. In both cases, where we affirmed convictions of capital murder in the commission of robbery, the robberies were consummated. Cases from other jurisdictions are not persuasive in respect to this question pertaining to construction of Virginia statutes. To hold that a capital murder conviction is valid where there has only been an attempted robbery would be to ignore the plain language of §§ 18.2-31 and 18.2-32 and the clear distinction between them. We not only decline the invitation to retract the statement in *Turner,* but we reaffirm it as the correct interpretation of the meaning of §§ 18.2-31(d) and 18.2-32.

In reply to our inquiry, Ball's counsel of course argued that since Roark was killed during an attempted robbery, rather than an actual robbery, Ball could not properly be convicted of capital murder. Unfortunately, this argument was not presented at trial.

The instructions proffered by Ball, and refused by the trial court, were incorrect. The question whether Ball committed a willful, deliberate and premeditated act, addressed in proffered Instruction B, was not relevant.[4] And proffered Instruction F was incorrect because it would have permitted the jury to find Ball guilty of capital murder, murder of the second degree, or voluntary or involuntary manslaughter. There was no evidence to support any of these findings which would have been permissible if the instruction had been granted.

At the conclusion of the presentation of evidence by the Commonwealth, Ball's counsel moved to strike the evidence as to the charge of capital murder on the ground that there was no evidence that the killing was willful, deliberate, and premeditated. The trial court overruled the motion. If the motion had been based upon the failure of the Commonwealth to adduce evidence that the killing occurred in the commission of robbery, the court would have erred in overruling it.

When Ball proffered Instructions B and F, which were incorrect statements of the applicable law, the court refused them on the ground that under the evidence capital murder was the only offense of which Ball could be convicted. This was an erroneous ruling, to which a valid objection, however, was not stated in the trial court with reasonable certainty. Under Rule 5:21 we do not notice such errors except in those rare instances when it is necessary to enable us to attain the ends of justice. This is one of those instances. Ball has been con-

---

[4] Even if it was a "willful, deliberate and premeditated" killing, unless the robbery was committed, Ball could only be prosecuted under § 18.2-32.

victed of a crime of which under the evidence he could not properly be found guilty. The court erred in overruling the defense motion to strike the evidence as to capital murder, and in instructing the jury on that offense. We understand the reason for the erroneous rulings, but we cannot permit this conviction to stand by ignoring the errors.

We will reverse the judgment of the trial court and remand the case for a new trial under proper jury instructions.

*Reversed and remanded.*