COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Kelsey and McClanahan
Argued at Salem, Virginia


JERRY LAVAIL STONE

                                          MEMORANDUM OPINION[*] BY
v.       Record No. 1570-09-3        JUDGE ELIZABETH A. McCLANAHAN
                                              OCTOBER 26, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BLAND COUNTY
Josiah T. Showalter, Jr., Judge

M. Keith Blankenship for appellant.

Craig W. Stallard, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


The trial court found Jerry Stone guilty of abduction, in violation of Code § 18.2-47, and

use of a firearm during the commission of abduction, in violation of Code § 18.2-53.1.  Stone

argues on appeal that the evidence was insufficient to support his convictions because he was

acting in self-defense during his confrontation with the victim, thus negating the element of

abduction that requires the defendant's conduct to be "without legal justification."  Code

§ 18.2-47(A).  Concluding that Stone failed to preserve this argument at trial, we affirm the trial

court.

I.

This case arose from a confrontation between Stone and the victim, Mathew Justice,

when Stone discovered Justice sawing a tree with a chain saw on property in which Stone

claimed an ownership interest.  Justice was living with his girlfriend in a house located on the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

same property, and claimed that he had permission from his girlfriend's father (Stone's bother), who also purportedly owned an interest in the property, to cut the tree.

Justice testified that while he was bent over sawing the tree, located in a wooded area behind his house, he heard six or seven gunshots and saw them hitting the ground near his feet. When Justice looked up, he saw Stone shooting a rifle in Justice's direction from a distance of approximately ten to fifteen feet away, causing Justice to fear for his life. Stone then demanded that Justice "get off the property," cursed Justice, and forced Justice to leave the area on foot—refusing to allow Justice to take the tractor that he drove to the site. Stone also told Justice to leave the chain saw, but Justice kept it because it was not Justice's saw and he "wasn't going to leave it with [Stone] to tear up." As they walked away, Justice explained, Stone kept the barrel of his rifle against the back of Justice's neck. After they walked in that position for about fifty yards, Justice "felt the gun ease off, [at which time he] took off running and made it to the house and called the police." Justice further testified that he heard two more gunshots as he was running toward his house.[1]

Testifying in his own defense, Stone disputed Justice's version of the encounter. Stone stated that, when he first approached Justice, Justice turned around and "motioned to swing" his chain saw at Stone; Stone fired "a defensive warning shot," and Justice "lower[ed] the chain saw." Stone then told Justice to stop what he was doing and leave the property, and simply "escorted" Justice toward Justice's house, without ever pointing his gun at Justice. Stone stated that he was "fifty or sixty feet or more" behind Justice as he followed Justice out of the woods, and when Justice "got to the edge of the clearing," Stone "just let him walk on off."

---

[1] Law enforcement officers also testified for the Commonwealth regarding their four to five hour search for Stone with a tracking dog over a large wooded area, after responding to Justice's call. After following Stone's movements consisting of several circles, i.e., "double-backs," across the wooded property, the officers found Stone lying face down in tall weeds next to a fence.

Stone's counsel argued at the close of all the evidence that Stone was not guilty of abducting Justice because Stone did not seize, detain or control him, and "didn't take him anywhere." Stone merely "approached Mr. Justice, told him . . . to leave, just get off the property, leave. He allowed Mr. Justice to take the chain saw and [Stone then] proceeded to escort [Justice] down the mountain towards Mr. Justice's residence . . . ." Stone's counsel asserted that Stone did "what any landowner would when they encounter someone cutting down their trees on . . . some property they owned." As for Stone firing his gun, his counsel stated, "when Mr. Justice come [sic] up with the chain saw, it was a reflex action, the gun fired . . . at Mr. Stone's feet. [Stone] testified he was never firing at Mr. Justice, . . . [Stone] simply wanted [Justice] to stop cutting the trees and exit that part of the property . . . ." Under such circumstances, counsel argued, Stone did not have the specific intent to deprive Justice of his "personal liberty," as required for the commission of abduction under Code § 18.2-47(A). "[T]he only intent Mr. Stone had," according to counsel, "was to order Mr. Justice off this property . . . and he proceeded to escort [Justice] off the property."

The trial court, as fact finder, expressly credited Justice's testimony, discredited Stone's testimony, and found Stone guilty of abduction and use of a firearm during the commission of the abduction.

## II.

Code § 18.2-47(A) provides that

> [a]ny person who, by force, intimidation or deception, and *without legal justification* or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction."

(Emphasis added.)

Stone now argues on appeal that the evidence established he was acting in self-defense during his confrontation with Justice and, therefore, the Commonwealth's evidence was insufficient as a matter of law to support his conviction for abduction, and the related firearm conviction. More specifically, Stone argues that because Justice was "wielding a deadly weapon," a chain saw, "and using it in an aggressive fashion, Mr. Stone was entitled to *use such force* as was necessary to repel the attack, and was not required to retreat from his [a]ssailant." (Emphasis added.) Stone further asserts that "[i]n the face of conduct so brazen and aggressive [he] would have been legally entitled to kill the ostensible victim." Stone would thus have us conclude that his entire conduct was legally justified under Code § 18.2-47(A) because the evidence established that he was only acting in self-defense. See Taylor v. Commonwealth, 260 Va. 683, 690, 537 S.E.2d 592, 596 (2000) (explaining that under Code § 18.2-47(A) "[t]he word 'justification' simply means '[a] lawful or sufficient reason for one's acts or omissions'" (quoting Black's Law Dictionary 870 (7th ed. 1999))).

As explained above, Stone did not argue to the trial court that the evidence showed he was justified in using force against Justice by acting in self-defense to avoid death or serious personal injury—such that he actually would have been "entitled to kill [Justice]." See Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991) ("[T]he amount of force used to defend oneself must not be excessive and must be reasonable in relation to the perceived threat." (citation omitted)). Instead, Stone's counsel argued just the opposite to the trial court in summation—that Stone used no such force against Justice. Without ever pointing his gun at Justice, Stone's counsel asserted, Stone simply approached Justice in order to tell him to "just get off the property" and then "escorted" Justice down the mountain, from a distance of fifty to sixty feet behind him, according to Stone. Thus, Stone's counsel argued, Stone did not seize, detain or control Justice, nor did he "take [Justice] anywhere." And that assertion, if true, would have

- 4 -

rendered irrelevant any question regarding the "legal justification" of Stone's actions under Code § 18.2-47(A). That is, no finding would have been required as to whether Stone's conduct was legally justified if, in fact, he did not engage in the threshold conduct proscribed under the statute.[2]

Under Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Pursuant to this rule, "[t]his Court 'will not consider an argument on appeal that was not presented to the trial court.'" Kolesnikoff v. Commonwealth, 54 Va. App. 396, 402, 679 S.E.2d 559, 562 (2009) (quoting Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998)). To preserve an evidentiary sufficiency argument in a bench trial, "the defendant must make a motion to strike at the conclusion of all the evidence, present an appropriate argument in summation, or make a motion to set aside the verdict." Howard v. Commonwealth, 21 Va. App. 473, 478, 465 S.E.2d 142, 144 (1995). Either way, the argument must be specific. Bowling v. Commonwealth, 51 Va. App. 102, 106, 654 S.E.2d 354, 356 (2007); Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*); Mounce v. Commonwealth, 4 Va. App. 433, 435, 357 S.E.2d 742, 744 (1987). Further, "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue." Edwards, 41 Va. App. at 760, 589 S.E.2d at 448. See Andrews v. Commonwealth, 37 Va. App. 479, 493, 559 S.E.2d 401, 408 (2002) (explaining that the purpose of Rule 5A:18 is "to ensure that the trial court and opposing party are given the opportunity to intelligently address,

---

[2] As a practical matter, given Stone's testimony, in an effort to preserve a justification/self-defense argument for appeal Stone would have needed to make inconsistent arguments to the trial court to the effect that he used no force against Justice, but, if he did, he did so in self-defense.

examine, and resolve issues in the trial court, thus avoiding unnecessary appeals"). Thus, given that Stone did not argue to the trial court that his conduct was legally justified because he was acting in self-defense, Stone failed to preserve the argument for appeal.

Stone argues, in the alternative, that if he did default on his self-defense argument this Court should apply the "ends of justice" exception to Rule 5A:18 and consider the argument. It is well settled that the "ends of justice" exception to the rule is "narrow and is to be used sparingly." Bazemore v. Commonwealth, 42 Va. App. 203, 219, 590 S.E.2d 602, 609 (2004) (*en banc*) (citation and internal quotation marks omitted). As the Virginia Supreme Court recently reiterated, application of this exception is limited to those cases where "'the judgment of the trial court was error and application of the exception is necessary to avoid a grave injustice or the denial of essential rights.'" Brown v. Commonwealth, 279 Va. 210, 219-20, 688 S.E.2d 185, 190 (2010) (quoting Charles v. Commonwealth, 270 Va. 14, 17, 613 S.E.2d 432, 433 (2005)). Only in "rare instances" does this occur. Ball v. Commonwealth, 221 Va. 754, 758, 273 S.E.2d 790, 793 (1981).

Still, Stone contends this case presents facts requiring application of this limited "ends of justice" exception because he was "'convicted for conduct that was not a criminal offense'" (quoting Redman v. Commonwealth, 25 Va. App. 215, 222, 487 S.E.2d 269, 273 (1997)). See id. at 221-22, 487 S.E.2d at 273 (explaining that "[i]n order to show that a miscarriage of justice has occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur"). In support of this contention, Stone simply, but erroneously, characterizes the evidence as though it were undisputed that he acted in self-defense during his confrontation with the victim. The victim's testimony, which the trial court credited as it discredited Stone's testimony, defies any such characterization of the

evidence.  And we do not reweigh the evidence on appeal.  <u>Williams v. Commonwealth</u>, 56 Va. App. 638, 642-43, 696 S.E.2d 233, 235 (2010) ("[A]ppellate courts are not permitted to reweigh the evidence . . . because we have no authority to preside *de novo* over a second trial." (citations and internal quotation marks omitted)).  Stone has thus failed to establish any "grave injustice" or "denial of essential rights" implicated by his convictions.  <u>Brown</u>, 279 Va. at 219-20, 688 S.E.2d at 190.  Therefore, we will not consider his justification/self-defense argument under the ends of justice exception to Rule 5A:18.

For these reasons, we affirm Stone's convictions.

<u>Affirmed.</u>